PEOPLE v BOOTH

PEOPLE v LONG

Docket Nos. 62341, 62342. Argued October 7, 1980 (Calendar Nos. 1, 2).—Decided October 5, 1982. Rehearing denied in *Booth, post,* 1112.

Terry L. Booth and James A. Long were each charged with two counts of first-degree criminal sexual conduct arising out of one episode. As a result of plea bargaining, each defendant pled guilty but mentally ill to one count of first-degree criminal sexual conduct in the Alpena Circuit Court. Booth's plea was accepted by Joseph P. Swallow, J., and Long's was accepted by Philip J. Glennie, J. During each plea-taking proceeding, interrogation by the court showed that the defendant could not recall the details of the offense because of intoxication by alcohol and phencyclidine. Because of that inability, the court in each case consulted the transcript of the joint preliminary examination to establish a sufficient factual basis for the plea.

The defendants appealed separately. In *Booth,* the Court of Appeals, D. E. Holbrook and Beasley, JJ. (M. F. Cavanagh, P.J., dissenting), held that the trial court erred in relying on the transcript to establish a factual basis for the plea and remanded the case to the trial court to allow the people to supply a sufficient factual basis (Docket No. 31080). In *Long,* the Court of Appeals, Allen, P.J., and V. J. Brennan and M. F. Cavanagh, JJ., also held that the trial court erred in relying on the transcript, but set aside the defendant's plea and remanded the case for either negotiation of a plea of nolo contendere or trial (Docket No. 77-273). The defendant applies for leave to appeal in *Booth,* and the people apply for leave to appeal in *Long.*

In an opinion by Chief Justice Coleman, joined by Justices

REFERENCES FOR POINTS IN HEADNOTES

[1-5, 7] 21 Am Jur 2d, Criminal Law §§ 44, 100, 489 *et seq.,* 492 *et seq.*

Amnesia as affecting capacity to commit crime or stand trial. 46 ALR3d 544.

Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.

Modern status of rules as to burden and sufficiency of proof of mental irresponsibility in criminal case. 17 ALR3d 146.

[6] 21 Am Jur 2d, Criminal Law § 88.

Williams, Levin, Fitzgerald, Ryan, and Moody, the Supreme Court *held:*

A forgetful defendant is not precluded from entering a plea of guilty but mentally ill. A trial judge presiding over a plea-taking proceeding may accept such a plea from a defendant who wishes to tender it, but who is unable to attest to the details of the crime because of lack of memory. A factual basis for the plea may be elicited from the defendant, or, where the required facts cannot be recalled, may be established by reference to transcripts of a preliminary examination or trial, or may be elicited from witnesses. In all other respects, the trial court must adhere to the guidelines for taking pleas of guilty and nolo contendere as set forth in the court rule and to the safeguards specifically afforded by the statute authorizing the plea of guilty but mentally ill. Accordingly, the judgments of the Court of Appeals are reversed, and the defendants' convictions and sentences are reinstated.

1. The Legislature, in enacting the statute providing for a verdict of guilty but mentally ill, appears to have intended to ensure that criminally responsible but mentally ill defendants obtain professional treatment while incarcerated or on probation to assist them in regaining their mental health and to assure the public that a criminally responsible but mentally ill defendant would not be released without having received necessary psychiatric care. To deny amnesic defendants the opportunity to plead guilty but mentally ill and thus to avail themselves of treatment due under the statute would undercut one of the perceived legislative purposes.

2. The statute providing for the verdict of guilty but mentally ill is broadly addressed to the creation of an altogether different verdict which encompasses findings of both criminal responsibility and mental illness. The phrase "guilty but mentally ill" can be viewed as a generic phrase denoting an adjudication of criminal responsibility as well as mental illness at the time of the offense. The statute also provides that the plea of guilty but mentally ill may be accepted "in lieu of" a plea of guilty or nolo contendere, suggesting that where questions of mental illness must be determined in addition to the usual question of criminal liability, the plea acts as an addition to the more traditional forms of pleas.

3. Rules of practice set forth by statute which do not conflict with court rules serve in lieu of court rules until superseded by rules adopted by the Supreme Court. The Legislature, in enacting the statute permitting a plea of guilty but mentally ill, established a plea for which the Supreme Court has provided

no procedure by rule. The statute is not inconsistent with any established court rule and the procedure provided for accepting the plea is consistent with the procedure for accepting pleas of guilty and nolo contendere as provided in the court rules. In this case, the statutory requisites to establish mental illness at the time of the offense were followed on a course stipulated by counsel and carried out by the court. The record indicates that each defendant understood what he was doing and voluntarily wished to enter his plea.

4. A reviewing court must determine whether an adequate factual basis was elicited from a defendant or from alternate reliable sources at the plea-taking proceedings that would enable a trier of fact to convict the defendant of the crimes charged. In this case, the transcript of the defendants' preliminary examination upon which the trial court relied in accepting their pleas discloses such bases. The accuracy of the pleas was not impugned by the prosecutor's failure to negate the defense of intoxication. First-degree criminal sexual conduct involving sexual penetration of a person under the age of 13 has been regarded as a general intent crime, and voluntary intoxication is no defense.

5. Failure to delineate defenses which might have been available to the defendants did not render their pleas made without understanding. The trial judge, under the court rule, is not obliged to explain possible defenses and the interjection of the issue of mental illness does not require such an explanation. Nor were the pleas involuntary. The substance of the plea-bargaining agreements was dismissal of one count of first-degree criminal sexual conduct in each case in exchange for a plea of guilty but mentally ill to the remaining count. The defendants acknowledged the extent of the promises on the record. Any further promises relative to benefits to be derived as a consequence of the pleas is not a matter of record. In addition, the defendants' allegations that they have failed to receive psychiatric treatment required by the statute does not serve to invalidate their pleas.

Justice Kavanagh, dissenting, would hold that a plea of guilty but mentally ill should not have been accepted in either case because it is not authorized by court rule; he would set aside each plea and remand the cases for the purpose of accepting pleas of guilty or trying the cases.

1. The statute which purports to authorize a trial court to accept a plea of guilty but mentally ill is but a procedural suggestion by the Legislature. It has not been adopted by the Supreme Court as a rule of practice and procedure, a function

committed exclusively to the Court by the constitution, and has no legal effect. The rules of criminal procedure do not provide for a plea of guilty but mentally ill.

2. Pleading in Michigan courts should be limited to pleas of guilty or not guilty. A plea of nolo contendere should not be used. Whatever value a nolo contendere plea may have under federal criminal procedure, its legitimate utility in Michigan practice has not been demonstrated. Arguments in favor of pleas of nolo contendere or guilty but mentally ill are based on a claimed value to the defendant. But the arguments misperceive the purpose of pleading, which is simply to fix the matters to be proved in an adversary proceeding.

3. A defendant who cannot remember the facts and circumstances of the crime with which he is charged no doubt will have a difficult time establishing a defense. However, unless he wishes to plead guilty, the state should be required to prove its case. If the state wishes to provide treatment for a sick person found to be guilty of a crime, it may do so. But whether or not it provides treatment should not affect the procedure to establish that person's guilt.

86 Mich App 646; 273 NW2d 510 (1978) reversed.

86 Mich App 676; 273 NW2d 519 (1978) reversed.

OPINION OF THE COURT

1. CRIMINAL LAW — GUILTY BUT MENTALLY ILL — AMNESIA.

A defendant who is unable to recall some or all of the events surrounding the commission of a particular crime is not precluded from entering a plea of guilty but mentally ill; in accepting the plea, a trial court may elicit a factual basis for the plea from the defendant, from transcripts of a preliminary examination or trial, or from witnesses; in all other respects, the court must adhere to the procedures governing the taking of guilty or nolo contendere pleas as set forth in the court rules and must adhere to the additional safeguards afforded by the statute providing for the plea of guilty but mentally ill (MCL 768.36[2]; MSA 28.1059[2]; GCR 1963, 785.7).

2. CRIMINAL LAW — GUILTY BUT MENTALLY ILL — ACCEPTANCE OF PLEA — PROCEDURE.

The statute which permits a defendant to enter a plea of guilty but mentally ill is not inconsistent with any established court rule and the procedure provided for accepting the plea is consistent with the procedures prescribed in the court rules for accepting pleas of guilty and nolo contendere; these requirements, coupled with the additional requirements in the statute

to establish mental illness, are entirely adequate to insure the constitutional validity of the plea (MCL 768.36[2]; MSA 28.1059[2]; GCR 1963, 785.7).

3. CRIMINAL LAW — GUILTY BUT MENTALLY ILL — AMNESIA.

The verdict of guilty but mentally ill was established by the Legislature as an alternative in cases in which a defense of insanity is asserted, and was intended to apply to defendants who, although criminally responsible, are found to have suffered from mental illness at the time of the offense, so that they may receive psychiatric treatment during their incarceration or probation (MCL 768.36[2]; MSA 28.1059[2]).

4. CRIMINAL LAW — GUILTY BUT MENTALLY ILL — ACCEPTANCE OF PLEA.

The factual basis for accepting a plea of guilty but mentally ill may be elicited from a defendant, and where the defendant is unable to attest to the details of the crime charged because of lack of memory, the basis may be established by reference to a transcript of the defendant's preliminary examination or trial or may be elicited from witnesses (MCL 768.36[2]; MSA 28.1059[2]; GCR 1963, 785.7).

5. CRIMINAL LAW — GUILTY BUT MENTALLY ILL — ACCEPTANCE OF PLEA.

A trial court is not required to explain possible defenses which might be available during a trial to a defendant who pleads guilty but mentally ill (MCL 768.36[2]; MSA 28.1059[2]; GCR 1963, 785.7[1][a]).

6. CRIMINAL LAW — GUILTY BUT MENTALLY ILL — FAILURE TO RECEIVE TREATMENT.

A naked allegation of failure to receive psychiatric treatment following incarceration by a defendant who pled guilty but mentally ill will not serve to invalidate an otherwise valid plea, although it may provide the basis for an action by the defendant against the agency which failed to fulfill the statutory mandate of providing such treatment (MCL 768.36[2]; MSA 28.1059[2]).

DISSENTING OPINION BY KAVANAGH, J.

7. CRIMINAL LAW — GUILTY BUT MENTALLY ILL — ACCEPTANCE OF PLEA — PROCEDURE.

*The statute which purports to authorize a trial court to accept a plea of guilty but mentally ill has not been adopted by the Supreme Court as a rule of criminal procedure, a function*

*committed exclusively to the Court by the constitution, and has no legal effect, and because the rules of criminal procedure do not provide for such a plea, it should not be accepted by a trial court (Const 1963, art 6, § 5; MCL 768.36[2]; MSA 28.1059[2]; GCR 1963, 785.1).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Theodore O. Johnson,* Prosecuting Attorney, and *Thomas C. Nelson,* Assistant Attorney General, for the people.

*Norris J. Thomas, Jr.,* Chief Deputy State Appellate Defender, for defendant Booth.

*P. E. Bennett,* Assistant State Appellate Defender, for defendant Long.

COLEMAN, C.J. The key issue in these cases[1] of first impression is whether a defendant who is unable to recall some or all of the events surrounding the commission of a particular crime may enter a plea of guilty but mentally ill[2] to that crime, and, if so, what procedure is to be utilized at the plea-taking proceeding to establish a factual basis for the plea. In addition to our analysis of these primary issues, we touch upon other tangential contentions advanced by defendants.

We conclude that a forgetful defendant is not precluded under the terms of the statute from entering a plea of guilty but mentally ill. A trial judge presiding over the plea-taking proceeding of a defendant who wishes to plead guilty but men-

[1] We initially denied defendant Booth's and, in *Long,* the prosecutor's applications for leave to appeal, 406 Mich 883 (1979). On reconsideration, we ordered that the applications be held in abeyance pending our decision in *People v McLeod,* 407 Mich 632; 288 NW2d 909 (1980), 406 Mich 993 (1979). After our decision in *McLeod* was issued, we granted leave to appeal, 408 Mich 893 (1980).

[2] MCL 768.36(2); MSA 28.1059(2).

tally ill, but who is unable to attest to the details of the crime because of a lack of memory, may accept such a plea. The factual basis may be elicited from the defendant. If the defendant cannot recall the facts required, a transcript of the preliminary examination or trial testimony, if any, may be considered by the court. Alternatively, a factual basis may be elicited from witnesses. In all other respects, the court must adhere to the constraints of GCR 1963, 785.7 as it relates to pleas of guilty. Because there is no specific court rule designed to afford procedure for a guilty but mentally ill plea, we also adhere to those added safeguards specifically afforded by statute to defendants who tender a plea of guilty but mentally ill.

Accordingly, we reverse the judgments of the Court of Appeals in both cases. We reinstate defendants' plea-based convictions and sentences.

## I

Defendants Terry Lee Booth and James Arthur Long each were charged with two counts of first-degree criminal sexual conduct.[3] On December 17, 1975, a joint preliminary examination was conducted, at which the two twelve-year-old female victims and the two physicians who had examined the victims subsequent to the commission of the offenses were witnesses. Defendants were bound over for trial as charged.

A review of the lower court files reflects that before the instant pleas were offered, substantial efforts were undertaken to inquire into defendants' competency to stand trial as well as their criminal responsibility at the time the crimes were commit-

---

[3] MCL 750.520b; MSA 28.788(2).

ted. Each defendant had filed a timely notice of insanity defense.[4]

The trial court repeatedly requested—and received—assurances that defendants were, in fact, competent to stand trial. Defendants sought and obtained independent psychiatric evaluations,[5] and were also committed to the Center for Forensic Psychiatry for ascertainment of criminal responsibility. Additionally, supplemental statements (depositions, in the case of defendant Long) specifically directed to the issue of mental illness were prepared by the various examining psychiatrists and were submitted to the trial court.

Plea negotiations took place, and on July 26, 1976, defendant Booth offered a plea of guilty but mentally ill to a single count of first-degree criminal sexual conduct. In exchange, the prosecutor agreed to dismiss the remaining count. Defendant Long entered an identical plea before a different judge, in return for a similar agreement by the prosecutor, on November 3, 1976.

The plea-taking proceedings conducted in these cases were unique, both by virtue of the nature of the pleas offered and the complicating fact of defendants' undisputed loss of memory with regard to the details of the offenses. The procedure fashioned by the judge presiding over defendant Booth's plea parallels that followed at defendant Long's plea-taking. Basically, the trial judges adhered to GCR 1963, 785.7, the court rule implemented to facilitate the proper advice and infor-

---

[4] MCL 768.20a; MSA 28.1043(1).

[5] MCL 768.20a(3); MSA 28.1043(1)(3).

mation of rights in the context of pleas of guilty and nolo contendere.[6]

Because defendant Booth was able only to recount some events preliminary and subsequent to the perpetration of the crime, the trial judge, who advised the parties that he had read the preliminary examination transcript, referred to that transcript for the pertinent facts and concluded that a sufficient factual basis had been established. Defendant Booth acknowledged on the record his belief, derived from the facts available to him, that he was in fact guilty of the crime to which his plea was being offered. Like facts apply to Long.

The trial judge next focused his attention upon the question of defendant Booth's mental illness at the time of the offense. The prosecutor reported that, in lieu of a hearing on the issue of mental illness, the parties had stipulated to the trial court's use of reports and letters prepared by the psychiatric examiners to ascertain mental illness (the parties also agreed that the examiners would be produced if necessary to the trial court's determination). The proffered documents were admitted into evidence without objection. On the basis of the documents presented, the trial judge found that defendant Booth had not been insane at the time of the offense, but had been mentally ill as a result of voluntary drug-alcohol intoxication.

On August 16, 1976, defendant Booth was sentenced to life imprisonment, with a recommendation that he receive alcohol and drug counseling while incarcerated. At defendant Long's sentenc-

---

[6] Aside from the contentions to be discussed *infra,* neither defendant complains that the recitals of rights and information at the plea-taking proceedings were deficient in any way.

ing on November 9, 1976, the trial judge imposed a sentence of from 15 to 25 years imprisonment, and further noted that he would oppose any early release.

On appeal, the Court of Appeals panel assigned to decide defendant Booth's appeal concluded that the lower court had erred in relying on the preliminary examination transcript to establish the factual basis for the plea, and remanded to the trial court to allow the prosecutor to supply a sufficient factual basis.[7] Dissenting, Judge CAVANAGH would vacate Booth's plea-based conviction and remand for trial. A different panel of the Court of Appeals considered defendant Long's appeal. That panel also decided that it was inappropriate for the trial court to have adduced a factual basis for the plea by resorting to the preliminary examination transcript. However, instead of remanding for supplementation of the record, the *Long* panel set aside the plea and remanded either for negotiation of a plea of nolo contendere or for trial.[8]

## II

## A

The foundational issue presented is whether a defendant suffering from amnesia with regard to the particulars of the charged crime is capable of entering the legislatively created plea of guilty but mentally ill.[9]

---

[7] 86 Mich App 646; 273 NW2d 510 (1978).

[8] 86 Mich App 676; 273 NW2d 519 (1978).

[9] Although this is a foundational issue, it has not been approached by the defendants in the same manner in this Court. For example, the Court of Appeals in *Long* believed that a plea of guilty but mentally ill could not be accepted from a forgetful defendant because of his or her inability to supply a factual basis through direct interrogation. Defendant Long adheres to this position. On the other

We can discern no impediment to the entry of a plea of guilty but mentally ill under circumstances involving a forgetful defendant. Our conclusion is based upon several considerations: (1) the intent of the Legislature in promulgating the guilty but mentally ill statute; (2) the precise language used by the Legislature in establishing ·the plea of guilty but mentally ill; and (3) in conjunction with the second consideration, the equivalent functions of the more traditional pleas of guilty and nolo contendere and the relationship of these pleas to a plea of guilty but mentally ill.

The verdict of "guilty but mentally ill"[10] was introduced into the jurisprudence of this state by 1975 PA 180 (effective July 25, 1975), an act of the Legislature which also modified the procedures to be used in cases in which an insanity defense is asserted. The Legislature's intent in establishing a fourth verdict which might be returned by a jury presented with an insanity defense, although not without question or controversy,[11] appears to have been twofold: (1) to ensure that criminally responsible but mentally ill defendants obtain professional treatment in "the humane hope of restoring their mental health" while incarcerated or on

hand, defendant Booth, in his appeal to this Court, concedes that a nolo contendere-type plea might be accepted under the guilty but mentally ill statute, provided that a forgetful defendant who wishes to enter a plea of this type is afforded certain additional safeguards.

[10] As of this writing, it appears that five other states, Illinois, Indiana, Georgia, New Mexico, and Delaware, authorize a guilty but mentally ill verdict. Legislation to permit this verdict has been urged in other jurisdictions, see, e.g., Gall v Commonwealth, 607 SW2d 97, 113 (Ky, 1980). The United States Congress presently has such a verdict under consideration.

[11] See, generally, Note, The Constitutionality of Michigan's Guilty But Mentally Ill Verdict, 12 J L Reform 188 (1978); Corrigan & Grano, 1976 Annual Survey of Michigan Law: Criminal Law, 23 Wayne L Rev 473, 474-475 (1977); Schwartz, Moving Backward Confidently, 54 Mich Bar J 847 (1975).

probation, and, correlatively, (2) to assure the
public that a criminally responsible and mentally
ill defendant will not be returned to the streets to
unleash further violence without having received
necessary psychiatric care after sentencing. See
*People v McLeod,* 407 Mich 632, 663-664; 288
NW2d 909 (1980) (opinion of RYAN, J.); *People v
Seefeld,* 95 Mich App 197; 290 NW2d 123 (1980);
*People v Philpot,* 98 Mich App 257; 296 NW2d 229
(1980).

With particular reference to the first legislative
objective, it is readily apparent that these defen-
dants fall within the class of persons whose mental
health needs were intended to be accommodated
by the guilty but mentally ill statute. Like any
other defendant who, although criminally respon-
sible, has been found to have suffered from mental
illness at the time of the offense, these defendants
stand to benefit from such treatment "as is psychi-
atrically indicated" during the term of their incar-
ceration. To deny these amnesic defendants the
opportunity to plead guilty but mentally ill and, in
so doing, to avail themselves of any treatment due
them under the statute,[12] undercuts one of the
perceived purposes of the Legislature. When pro-
mulgating the guilty but mentally ill statute, the
Legislature intended to assist mentally ill defen-
dants to regain their mental health. In essence, the
guilty but mentally ill statute should apply to
those whom it was intended to assist.

We therefore conclude that, despite, and even
because of, their amnesia, these defendants are
intended recipients of whatever restorative bounty

[12] Amnesia appears to be a common symptom of mental illness, see
Note, *Amnesia: A Case Study in the Limits of Particular Justice,* 71
Yale L J 109 (1961).

the guilty but mentally ill statute might afford them during the period of their incarceration for the protection of society.

## B

Our second consideration more specifically concerns the precise language used by the Legislature in creating the plea of guilty but mentally ill.

MCL 768.36; MSA 28.1059 provides not only for a verdict of guilty but mentally ill to be rendered by judge or jury after trial, but also for a plea known as "guilty but mentally ill", provided that certain conditions have been met:

"If the defendant asserts a defense of insanity in compliance with section 20a and the defendant waives his right to trial, by jury or by judge, the trial judge, with the approval of the prosecuting attorney, may accept a plea of guilty but mentally ill in lieu of a plea of guilty or a plea of nolo contendere. The judge may not accept a plea of guilty but mentally ill until, with the defendant's consent, he has examined the report or reports prepared pursuant to section 20a, has held a hearing on the issue of defendant's mental illness at which either party may present evidence, and is satisfied that the defendant was mentally ill at the time of the offense to which the plea is entered. The reports shall be made a part of the record of the case. MCL 768.36(2); MSA 28.1059(2)."

One of the contentions raised is that the Legislature's exclusive use of the word "guilty" in describing the new plea precludes forgetful defendants, see *Guilty Plea Cases*, 395 Mich 96, 134; 235 NW2d 132 (1975), from entering a plea under the guilty but mentally ill statute. We do not read the statute in such a limiting manner.

The guilty but mentally ill statute is broadly

addressed to the creation of an altogether different verdict, one which encompasses findings of both criminal responsibility and mental illness. Understandably, the Legislature settled upon the phrase "guilty but mentally ill" to describe this new verdict. That the Legislature also bestowed this appellation upon the plea envisioned by the guilty but mentally ill statute appears to be indicative of a desire for uniformity of phraseology within the confines of the statute. Thus, "guilty but mentally ill" can be viewed as a generic phrase denoting the result which may be obtained under the statute— an adjudication of criminal responsibility as well as mental illness at the time of the crime.

Our interpretation of the guilty but mentally ill statute is reinforced by the fact that a plea of "guilty but mentally ill" is to be accepted "in lieu of" a plea of guilty or nolo contendere. This language suggests that where questions of mental illness must be determined in addition to the usual question of criminal liability (to which the traditional pleas are solely addressed), the plea established by MCL 768.36(2); MSA 28.1059(2) acts as an addition to the more traditional forms of pleas.

## C

Both defendants, the Attorney General, and the Court of Appeals have discussed the plea of guilty but mentally ill in terms of the existing procedure for accepting a guilty plea or a plea of nolo contendere as set forth in GCR 1963, 785.7. Several challenges to the proceedings have been presented.[13] (1) If these were essentially guilty-type

---

[13] We discuss some of these claims as if both defendants were similarly situated in their appeals to this Court. Technically, however, only those contentions advanced by defendant Booth are properly before us, since *Long* is a prosecutor's appeal, and defendant Long has not applied for leave to cross-appeal.

pleas, the trial courts were obliged to adduce the factual bases of the crimes via direct interrogation of defendants and thus erred in relying on the preliminary examination transcript; (2) if these were nolo contendere-type pleas, the trial courts erred in (a) failing to state on the record a reason why the nolo contendere pleas were appropriate, and (b) partially interrogating defendants with regard to their roles in the crimes.

However, we perceive the Legislature as having established an offense for which the Supreme Court has provided *no* procedure by which to address a plea of guilty. Therefore, the efforts to place a square peg in a round hole are necessarily frustrated.

Therefore, it is argued, the plea is of no legal effect until this Court acquiesces and adopts this procedural suggestion for retention.

This Court does possess broad powers in the forum of practice and procedure as provided in the 1963 Constitution. However, this does not mean that where this Court for some reason has failed to exercise its administrative rule-making powers to address a particular procedural problem, the Legislature's own pronouncement in this area is a nullity. One of our own court rules (GCR 1963, 16) specifies that "rules of practice set forth in any statute, not in conflict with any of these rules, shall be deemed to be in effect until superseded by rules adopted by the Supreme Court". See, also, *Wolodzko v Wayne Circuit Judge,* 382 Mich 528, 531; 170 NW2d 9 (1969). Quite simply, consistent legislative enactments serve in lieu of court rule until this Court promulgates its own requirements via court rule.

The statute which speaks to the plea of guilty but mentally ill is not inconsistent with any of our

established court rules. The statute, if it is to be viewed as formulating a procedure to be followed in a plea-taking proceeding, should not be looked upon as a nullity because this Court has not yet been prompted to address the plea in the context of our guilty plea rule, GCR 1963, 785.7.

Although we find no inconsistency between the statutory procedure for finding mental illness and our GCR 1963, 785.7, we have not completed our inquiry. We must determine if the mandates of *Boykin v Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969), have been followed, so that the record in each case demonstrates that the pleas were freely, understandingly and voluntarily effected.

This Court has purported to assist the bench and bar to assure defendants of constitutional protections in plea-based convictions by promulgating GCR 1963, 785.7.

The trial judge in each of the cases at bar advised the defendant of his constitutional rights and exhaustively interrogated him to the conclusion that each had freely, understandingly and voluntarily waived his right to a trial (pursuant to GCR 1963, 785.7) for a crime established by the stipulated admission of the preliminary examination record and supplemented by his own recollection.

Additionally, the statutory requisites to establish mental illness at the time of the offense were followed on a course stipulated by counsel and carried out by the court.

### III

The United States Supreme Court in *North Carolina v Alford,* 400 US 25; 91 S Ct 160; 27 L Ed

2d 162 (1970), found that a guilty plea could be accepted even if accompanied by protestations of innocence. The trial judge had heard witnesses testify as to Alford's guilt. Although the defendant denied guilt, he asked the court to accept his plea of guilty to second-degree murder because he faced the threat of a death penalty if he went to trial. The Court found that Alford's desire to avoid the death penalty did not necessarily make the plea involuntary, see Kamisar, LaFave and Israel, *Modern Criminal Procedure* (5th ed), p 1290 ff.

Defendants Booth and Long had allegedly participated in violent rapes of two children and had heard the testimony of the principal witnesses and the names of other endorsed witnesses. It is understandable that they might wish to avoid trial and plead only to one count of first-degree criminal sexual conduct. The record indicates that each defendant understood what he was doing and voluntarily, and with no coercion, wished to plead guilty but mentally ill.[14]

We would not force an unwilling defendant to go to trial if he wishes to avoid the risks and perhaps the degradation inherent in cases such as these.

The *Alford* Court said:

"[T]he Constitution is concerned with the practical consequences, not the formal categorization of state law. * * * Thus, while most pleas of guilty consist of

[14] Each defendant was asked whether, in light of all of the information before him, he believed that he was guilty of the crime to which his plea was being offered. Each replied affirmatively. Defendants' acquiescence in the evidence against them demonstrates their willingness to plead and to shoulder the consequences of their pleas. Also, it stands as "a precaution * * * against subsequent false claims of innocence". *People v Barrows,* 358 Mich 267, 272; 99 NW2d 347 (1959) (not here claimed).

both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. *An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.*" 400 US 37. (Emphasis added.)


## IV


However, as in *Alford,* we would require from some appropriate source strong evidence of actual guilt.

Therefore, we address the question of the sufficiency of the factual bases for the pleas entered here, established as they were by reference to testimony presented at defendants' joint preliminary examination.

The standard to be applied by an appellate court in its review of the adequacy of factual bases for a plea is "whether the trier of fact could properly convict on the facts" elicited from defendant at the plea-taking proceeding, *People v Haack,* 396 Mich 367, 376-377; 240 NW2d 704 (1976), or from alternate reliable sources, as in the case of a plea of nolo contendere. On these records, we find that the triers of fact could properly have convicted defendants of first-degree criminal sexual conduct, and that therefore the factual bases were sufficient.

The crime of first-degree criminal sexual conduct to which defendants entered their pleas is established by showing that the defendant in each instance engaged in sexual penetration of a person

under 13 years of age, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a).[15] A reading of the preliminary examination transcript properly relied upon by the lower courts in accepting defendants' pleas discloses (1) that the victims were both 12 years of age when the crimes were committed, (2) that defendants were the perpetrators, and (3) that each defendant accomplished sexual penetration with the victim named in the count to which he offered his plea.[16]

We cannot agree with defendant Booth that the accuracy of defendants' pleas—which a factual basis requirement is intended to ensure—was impugned by the prosecutor's failure to produce evidence negating an intoxication defense, a course suggested by *People v Stoner,* 23 Mich App 598; 179 NW2d 217 (1970).[17] *Stoner* is distinguishable on two counts. First, the defendant in *Stoner* pled guilty to unarmed robbery, a specific intent crime to which voluntary intoxication is a valid defense. However, first-degree criminal sexual conduct involving sexual penetration of a person under the

[15] The informations characterize the crimes as "criminal sexual conduct in the first degree by engaging in sexual penetration, accomplished through the use of force or coercion, with a female person under the age of thirteen years * * *. MCL 750.520b."

[16] Preliminary Examination Transcript, pp 15-16, 46-50, 79, 115-116.

[17] In *Stoner,* a guilty plea was offered because the Legislature had not yet authorized pleas of nolo contendere. The Court of Appeals, in an opinion written by then-Judge LEVIN, stated:

"When a defendant claims that because of intoxication he does not recall participating in the commission of the offense, but, nevertheless, desires to plead guilty, the people should be asked to produce evidence negating the intoxication defense. Such evidence might appear in the transcript of a preliminary examination presented to and read by the trial judge before accepting the plea. If from such evidence it appears that the people can substantially refute a claim of intoxication, then a factual basis for the defendant's plea would appear without regard to his own acknowledged recollection of what occurred. Upon such a showing and express and knowledgeable waiver of the defense by the defendant, the judge could properly accept the plea." (Footnotes omitted.) *Stoner, supra,* 608.

age of 13 has been regarded as a general intent crime.[18] As the law now stands, voluntary "intoxication is not a defense where only general intent needs to be shown". *People v Kelley,* 21 Mich App 612, 619; 176 NW2d 435 (1970), cited in *People v Crittle,* 390 Mich 367, 372; 212 NW2d 196 (1973). We would not require the prosecution to provide evidence at a plea-taking proceeding negating a defense of which defendants could not have availed themselves had they elected to go to trial. Second, the defendant in *Stoner* waived preliminary examination and the only source drawn upon to establish the factual basis for the plea was the forgetful defendant's own nebulous account of events. In contrast, the trial courts in these cases had at their disposal an alternate and trustworthy means of ascertaining a sufficient factual basis, a preliminary examination transcript.

## V

Defendants' remaining claims may be disposed of briefly.

Both defendants claim that their pleas were not understanding pleas because the trial judges failed to delineate defenses which might have been available to them had they proceeded to trial.[19] We reject this contention. GCR 1963, 785.7(1)(a) expressly states that "the court is not obliged to explain * * * possible defenses".

---

[18] The "sexual penetration" element of first-degree criminal sexual conduct, as defined by MCL 750.520a(h); MSA 28.788(1)(h), does not carry with it any specific intent requirement. Compare with the definition of "sexual conduct" for purposes of second-degree criminal sexual conduct, MCL 750.520a(g); MSA 28.788(1)(g).

[19] This contention is similar to the *Stoner* argument discussed in Part IV. However, the *Stoner* argument focuses upon whether the plea is accurate, whereas this claim centers upon whether the plea is understanding.

We are not persuaded that the interjection of the issue of mental illness into a case necessitates an additional explanation to the already lengthy list of rights and advice which must be imparted by the court at a plea-taking proceeding, particularly after defendant's participation in several pre-plea examinations with resultant reports and hearings concerning the findings of mental illness as an element of a conviction of guilty but mentally ill.

The claim also is made in an extra-record affidavit by Booth that his plea was involuntary because it was entered into with an exaggerated belief in the benefits to be derived from pleading guilty but mentally ill. We cannot agree. In each case, the substance of the plea-bargaining agreement was that the prosecution would concur in dismissal of one count of first-degree criminal sexual conduct, in exchange for a plea of guilty but mentally ill to another count. Each defendant acknowledged under oath and on the record that this was the only promise made. Obviously, dismissal of one count charging a serious felony in exchange for a plea to another count represents a substantial benefit to a defendant, especially in light of the brutal attacks as related in the preliminary examination by the children and examining physicians. Additionally, the Court does not look with favor upon *ex parte,* non-record affidavits filed in this Court as purported record supplementation.

Further, we reject defendants' assertion that because psychiatric treatment has not been forthcoming (as defendants contend in the case), their pleas of guilty but mentally ill were premised upon an illusory bargain and therefore were involuntary. A naked allegation of non-treatment or

inadequate treatment after sentencing will not serve to invalidate an otherwise valid plea of guilty but mentally ill, although non-treatment may possibly provide a basis for an action by defendants against those departments which have not fulfilled the statutory mandate of treatment as psychiatrically indicated. It is noted that the mental illness at the time of these offenses was found to be induced by alcohol and drug (PCP).

The remainder of defendant Booth's contentions have been examined and also are found to be without merit.

## VI

In conclusion, we find no impediment to the entry of a plea of guilty but mentally ill. The procedures used in accepting the pleas tendered in these cases were not infirm. Defendants' contentions that their pleas were, for whatever reason, not understanding or voluntary are without merit.

We therefore reverse the judgments of the Court of Appeals in *Booth* and *Long*. We reinstate defendants' plea-based convictions of guilty but mentally ill of first-degree criminal sexual conduct.

WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with COLEMAN, C.J.

KAVANAGH, J. *(for modification and affirmance).* Terry Lee Booth and James Arthur Long were each convicted of first-degree criminal sexual conduct on their pleas of guilty but mentally ill. In accepting the pleas, the trial judges, upon the stipulations of the parties, used the transcript of their joint preliminary examination and the reports and letters of the psychiatric experts who

had examined the defendants to establish the factual bases for the pleas because neither defendant could remember the details of the offenses.

On appeal, separate panels of the Court of Appeals concluded that the trial court erred in using the preliminary examination transcript to establish the factual bases for the pleas. In *Booth,* 86 Mich App 646; 273 NW2d 510 (1978), the Court remanded the case to the trial court to allow the prosecutor to establish a factual record to support the plea. In *Long,* 86 Mich App 676; 273 NW2d 519 (1978), the Court set aside the plea and remanded the case either for negotiation of a plea of nolo contendere or for trial.

Because I am satisfied that in neither case should the plea of guilty but mentally ill have been accepted, I would amend the orders to provide that the plea in each case be set aside and the matters remanded for the purpose of taking a guilty plea, or for trial.

The Michigan Constitution of 1963, art 6, § 5, provides, *inter alia,* "The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state."

We have pointed out in *Perin v Peuler,* 373 Mich 531, 541; 130 NW2d 4 (1964): "The function of enacting and amending judicial rules of practice and procedure has been committed exclusively to this Court * * *; a function with which the legislature may not meddle or interfere save as the Court may acquiesce and adopt for retention at judicial will."

GCR 1963, 785.1 sets forth the criminal procedure applicable to all criminal prosecutions.

GCR 785.6 makes provisions for a plea of not guilty, and GCR 785.7 makes provision for pleas of

guilty and nolo contendere. There is no provision in the rule for taking a plea of "guilty but mentally ill".

MCL 768.36(2); MSA 28.1059(2) purports to authorize a trial judge to "accept a plea of guilty but mentally ill in lieu of a plea of guilty or a plea of nolo contendere".

However, until this Court acquiesces and adopts for retention this procedural suggestion, it has no legal effect.

These cases are presented to us with the request by the prosecutor that such pleas should be approved as varieties of either a guilty plea or a plea of nolo contendere.

He argues that pleas of guilty but mentally ill are the functional equivalent of pleas of guilty and nolo contendere, and because they serve a good purpose (triggering the treatment possibility referred to in the statute) we should provide for their accommodation.

Insofar as all pleas which waive trial are equivalent for that function and so may properly be described as "functionally equivalent", the prosecutor is correct, but that fact does not provide a reason for recognizing a plea of guilty but mentally ill.

I am now convinced that our pleading should be limited to pleas of guilty or not guilty. Whatever value the nolo contendere plea may have in the federal procedure, its legitimate utility in Michigan practice has not been demonstrated.

The effort to accommodate concerns for *post-conviction* consequences has muddied our jurisprudence. Our procedure should be designed to implement and enforce the rights of the parties—to a fair trial or to a free waiver of that right.

So long as judges are embroiled in post-conviction matters such as sentencing and non-judicial activities, the temptation is to clutter up procedural rules with our suggestions for discharge of those duties.

A judge's training and education is aimed at making him expert in presiding over a trial before a jury or acting as the factfinder in a bench trial.

Court rules properly are concerned with and should be limited to the procedure of determining facts through an adversary proceeding.

A plea of nolo contendere should not be used. Unless a defendant wishes to plead guilty, a plea of not guilty should be entered. If the state can prove its case, it should do so. A defendant who cannot remember the facts and circumstances of an asserted crime will no doubt have a difficult time establishing a defense, but unless a defendant wishes to plead guilty—for that or some other reason—the state should be required to prove the case.

The arguments in favor of pleas of "nolo contendere" or "guilty but mentally ill" are based on a claimed value to the defendant. It is urged that a defendant should not be forced to acknowledge something he cannot remember, or to defend a charge he does not wish to defend because he cannot remember the transaction or does not think much of his defense.

These arguments misperceive the office of pleading, which is simply to fix the matters for proof in an adversary proceeding.

A plea of "guilty" amounts to a statement by a criminal defendant that the state does not have to prove anything; that the defendant is willing to waive the entire adversary proceeding; and that the defendant wishes to allow the imposition of

any lawful penalty provided for the conduct charged.

No defendant is obliged to plead guilty. Since the concept of "guilty" embraces a legal conclusion based on established facts, we permit a defendant to substitute his judgment for that of an independent factfinder whenever we accept a guilty plea. We do so on the theory that the defendant perceives some value to himself in avoiding trial.

Our concern has been, and should continue to be, that one wishing to plead guilty does so knowingly and freely, and that he is not induced to do so by ignorance or chicanery. GCR 785.7 is our cumbersome effort to meet that concern.

If the state wishes to provide treatment for a sick person who has been found guilty of a crime, it indeed may do so. Whether or not it does so, however, should not affect the procedure whereby guilt is established.

Inasmuch as we have not as yet provided any procedure for the pleading of the conclusion of "guilty but mentally ill", I would set aside these pleas and remand these cases for trial or for the taking of a guilty plea.